CHIEF JUSTICE RABNER delivered the opinion of the Court.
*115 **499 The Criminal Justice Reform Act (CJRA) provides that defendants "shall be afforded an opportunity ... to present witnesses" at pretrial detention hearings. N.J.S.A. 2A:162-19(e)(1). In this appeal, we consider whether the provision allows a defendant to compel an adverse witness to testify at a detention hearing. We find that the CJRA-like the federal and D.C. laws on which it is based in part-provides defendants a qualified right to summon adverse witnesses.
There are two components to a detention hearing. If no indictment has been returned, the State must present proof of probable cause. N.J.S.A. 2A:162-19(e)(2). To justify detention, the State must also present clear and convincing evidence that no release conditions would reasonably guard against the risk of danger, flight, or obstruction a defendant poses. N.J.S.A. 2A:162-18(a)(1). We find that, before calling an adverse witness, a defendant must proffer how the witness's testimony would tend to negate probable cause or undermine the State's evidence in support of detention in a material way.
I.
According to the affidavit of probable cause in this case, the police spotted defendant Leo Pinkston on June 4, 2017 in a car that matched the general description of a vehicle used in a shooting the day before. The officers observed the dark-colored car, with tinted windows, parked improperly. From an unmarked police vehicle, the officers "activated their lights and sirens." Defendant allegedly "disregarded" the lights and sirens and drove off; he then gained speed and ignored traffic signals. Because the **500 police car had engine trouble, other officers picked up the pursuit. Ultimately, defendant struck another car, and both vehicles collided with a light pole and caught on fire. The victim in the other car suffered burns and was taken to the hospital for treatment.
The accompanying complaint-warrant charged defendant with second-degree eluding, N.J.S.A. 2C:29-2(b), and second-degree aggravated assault while eluding, N.J.S.A. 2C:12-1(b)(6).
Pretrial Services prepared a Public Safety Assessment (PSA) that scored defendant 2 out of 6, with 6 being the highest, for risk of failure to appear, and 4 out of 6 for risk of new criminal activity. The PSA also had a flag for new violent criminal activity. Among other things, the PSA noted that defendant had four prior indictable convictions that included identity theft, attempted murder, and possession of a weapon. Pretrial Services recommended against defendant's release.
The State moved to detain defendant. The day before the scheduled hearing date, defense counsel asked for an adjournment to obtain additional discovery and subpoena police officers to testify at *116 the hearing. The State had provided two police reports in discovery. The first noted that when the police tried to conduct the motor vehicle stop, defendant's car "began to slowly travel," and the police "were unable to clearly identify the make and model of the" car because of low visibility and poor lighting. The second report referred to a radio broadcast of "shots fired at the officers." The author of the report spoke with an officer who said that he discharged his weapon at defendant after hearing the transmission. According to the report, two other officers also "discharg[ed] their firearms."
The trial court denied defendant's request for an adjournment. The court explained that information related to the pursuit and accident was not relevant to the detention motion. In addition, the court observed that federal courts had uniformly held that "a defendant does not have the right to call adverse witnesses at a detention hearing."
**501 The detention hearing was held on June 22, 2017. At the outset, defense counsel pressed his request for an adjournment to call the officers involved in the incident. Counsel argued that the circumstances of the pursuit weighed against a finding of probable cause and detention. He proffered that defendant did not knowingly speed away from the officers and did not shoot at them; that the officers violated departmental policy by shooting from and at a moving car; and that defendant crashed the car because the police fired shots at him. Counsel also submitted that he had the right to call witnesses under the statute.
The court acknowledged that the CJRA allows live testimony. However, it found that the evidence counsel sought to present was not relevant to the issue of probable cause. Defendant's arguments, the court noted, would probably be relevant at trial instead. After it considered the complaint, affidavit of probable cause, PSA, Preliminary Law Enforcement Incident Report, and the arguments of counsel, the court concluded that (a) probable cause existed, and (b) clear and convincing evidence established that defendant should be detained.
Defendant filed an expedited appeal. The Appellate Division granted defendant's motion to supplement the record with the police reports recounted above, but the panel concluded that, under the circumstances, the trial judge did not mistakenly exercise his discretion in denying defendant's request to call adverse witnesses. In an unpublished order, the panel affirmed the trial court's finding of probable cause and its order of detention.[1]
We granted defendant's motion for leave to appeal and accelerated the timing for oral argument.
**502 231 N.J. 418, 176 A.3d 221 (2017). We also granted the Attorney General, the Public Defender, and the American Civil Liberties Union of New Jersey (ACLU) leave to appear as amici curiae.
II.
Defendant argues that the trial court erred by not allowing him to call witnesses at the detention hearing. He contends the police reports and officer testimony would have established that probable cause did not exist because "it was very likely that *117 defendant never even realized that ... officers were pursuing him as he 'slowly' departed the area," and because "the car crash was occasioned by defendant's attempt to avoid death by gunfire." Defendant claims the same evidence would have rebutted the State's argument that he posed a danger to the community.
The Public Defender and ACLU both argue that the CJRA provides defendants who face detention an unconditional right to call witnesses, aside from generic limits that apply in all cases. For support, they rely on the plain language of the statute. They also contend that live testimony can be relevant as to both probable cause and the need for detention, and that the trial court abused its discretion in this case.
The State contends that defendants do not have an absolute right to call adverse witnesses under the statute. Instead, the State maintains, the Court should follow the majority view and adopt the approach outlined in United States v. Edwards, 430 A.2d 1321 (D.C. 1981) (en banc). The State also argues that the proffered reports and testimony were not relevant as to probable cause, and that the record amply supported defendant's detention.
The Attorney General echoes the State's position and contends that defendants do not have an "automatic and unfettered right" to compel the State's witnesses to testify. The Attorney General submits that, consistent with Edwards, defendants "should be required to either (1) proffer how [a] witness's testimony will negate probable cause, or (2) articulate a good-faith basis for believing that the witness will testify favorably to the accused on a **503 critical issue related to pretrial detention." Under that standard, the Attorney General contends that the trial court did not abuse its broad discretion when it denied defendant's request to call police officers to testify.
III.
Shortly before this appeal was argued, defendant pled guilty to second-degree eluding and fourth-degree aggravated assault by auto. The State then moved to dismiss defendant's appeal as moot. We denied the motion because "the appeal raise[d] an issue of public importance that is capable of repetition yet evades review." 232 N.J. 299, 179 A.3d 1053 (2018) ; see State v. Mercedes, 233 N.J. 152, 169, 183 A.3d 914 (2018). For the same reason, we now address when and under what circumstances defendants may compel adverse witnesses to testify at a detention hearing. Given the current posture of this case, however, we decline to evaluate whether the trial court abused its discretion when it ordered defendant detained.
IV.
A.
We begin with certain relevant principles under the CJRA. The law favors the pretrial release of defendants "by non-monetary means." N.J.S.A. 2A:162-15. A defendant may be detained pretrial only if, after a hearing, a judge finds "by clear and convincing evidence that no release conditions would reasonably assure the defendant's appearance in court, the safety of the community, or the integrity of the criminal justice process." State v. Ingram, 230 N.J. 190, 200-01, 165 A.3d 797 (2017) (citing N.J.S.A. 2A:162-18(a) ).
The statute and case law outline various safeguards that apply to detention hearings. The State must provide discovery before the hearing in accordance with State v. Robinson, 229 N.J. 44, 69-71, 160 A.3d 1 (2017). At the hearing, the State must first **504 establish probable cause that the defendant committed the charged offenses, *118 unless a grand jury has already returned an indictment. N.J.S.A. 2A:162-19(e)(2). The State may proceed by proffer to satisfy its burden of proof. See Ingram, 230 N.J. at 195, 165 A.3d 797.
Defendants have various rights at the hearing: to be represented by counsel, "to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." N.J.S.A. 2A:162-19(e)(1). Central to this appeal is the scope of a defendant's right "to present witnesses." See ibid.
To decide if detention is appropriate, " 'the court may take into account information' about the nature and circumstances of the offense, the weight of the evidence, the defendant's history and characteristics, the nature of the risk of danger and obstruction the defendant poses, and '[t]he release recommendation of the pretrial services program.' " Mercedes, 233 N.J. at 163, 183 A.3d 914 (citing N.J.S.A. 2A:162-20(a) to (f) ).
B.
Defendant, the Public Defender, and the ACLU argue that the plain language of the CJRA grants defendants an unconditional right to call witnesses at detention hearings. The State and the Attorney General contend that defendants possess only a qualified right in light of the history of the CJRA.
When a court interprets a statute, its task is to ascertain and give meaning to the Legislature's intent. State v. S.B., 230 N.J. 62, 67, 165 A.3d 722 (2017). As we noted in Robinson, "the text of the Criminal Justice Reform Act follows the federal Bail Reform Act of 1984, 18 U.S.C. §§ 3141 to 3156, and the District of Columbia's statutory scheme for pretrial detention, D.C. Code §§ 23-1321 to - 1333," in many respects. 229 N.J. at 56, 160 A.3d 1. The Legislature, in fact, "looked to both laws among others when it framed New Jersey's reform measure." Ibid. (citing sponsor's **505 comment at public hearing, Pub. Hearing Before S. Law & Pub. Safety Comm., S. Con. Res. 128 2 (2014)). We therefore "give careful consideration to federal case law that interprets the Bail Reform Act and the District of Columbia statute." Ingram, 230 N.J. at 205, 165 A.3d 797.
The relevant text in all three laws is identical: a defendant "shall be afforded an opportunity ... to present witnesses." Compare N.J.S.A. 2A:162-19(e)(1), with 18 U.S.C. § 3142(f)(2)(B), and D.C. Code § 23-1322(d)(4). When, as here, "the Legislature adopts or copies a law from another jurisdiction, we presume that it was aware of the construction given to that law by the courts of the other jurisdiction." Maeker v. Ross, 219 N.J. 565, 575, 99 A.3d 795 (2014).
A number of federal courts have followed the reasoning of United States v. Edwards, in which the District of Columbia Court of Appeals interpreted the D.C. Code. 430 A.2d at 1323. Relying in part on the statute's legislative history, the court found that a defendant has "only a conditional right to call adverse witnesses." See id. at 1334. The decision emphasized that a
court may require a proffer from the defense before compelling the presence of an adverse witness. The pretrial detention statute provides the accused with a right to present witnesses in his favor. Such an opportunity to respond is a fundamental procedural right which the government has no interest in restricting. Nevertheless, with regard to the government's witnesses, and particularly the complaining witness, the government does have an interest in preventing premature discovery. It also has *119 an interest in protecting the emotional and physical well-being of its witnesses. Under our holding that the government may proceed by proffer or hearsay, cross-examination for the limited purpose of impeaching the witness' credibility is an insufficient reason to compel a witness' presence.
[ Id. at 1338 (citation omitted).]
The Edwards court concluded that requiring a preliminary proffer about how "a witness' testimony will tend to negate substantial probability[2] that the accused committed the charged offense, is a **506 reasonable limitation on the accused's right to call witnesses" at a pretrial detention hearing. Ibid.
Other courts likewise call for some type of preliminary showing before they allow defendants to compel adverse witnesses to testify at detention hearings. In United States v. Winsor, for example, the government proceeded by proffer. 785 F.2d 755, 757 (9th Cir. 1986). The defendant then sought to cross-examine investigators and police officers to show "that he was arrested without probable cause." Id. at 756. The Ninth Circuit concluded that, "[w]ithout a proffer" from the defendant "that the government's proffered information was incorrect, the magistrate was not required to allow" the cross-examination. Id. at 757 ; see also United States v. Cabrera-Ortigoza, 196 F.R.D. 571, 575 (S.D. Cal. 2000) ("[A]bsent something credible to challenge the reliability or the correctness of the government's proffer, the Court need not compel live witnesses to testify.").
The Third Circuit, in United States v. Accetturo, similarly found that the district court did not abuse its discretion when it declined to compel a cooperating witness's appearance at a detention hearing. 783 F.2d 382, 388 (3d Cir. 1986). The Circuit Court stressed that the defense proffer gave "no reason to believe" the witness "would give evidence favorable" to the defendants "or would retract information harmful to them." Ibid. The court also observed that "the need for speed in reaching pretrial detention determinations justifies the use of procedures less demanding than those applicable to a 'full-blown trial.' " Id. at 390 ; see also United States v. Sanchez, 457 F.Supp.2d 90, 92-93 (D. Mass. 2006) (finding that "a defendant has no absolute 'right' to subpoena adverse witnesses at a detention hearing" and that defense counsel "must give the Court some basis for believing that [a] witness would produce testimony favorable to her client" or "some reason to question the reliability of hearsay evidence proffered by the Government").
The Eleventh Circuit, in United States v. Gaviria, agreed with Edwards that defendants have "only a conditional right to call **507 adverse witnesses" at detention hearings. 828 F.2d 667, 670 (11th Cir. 1987). The court, however, declined to require defendants to make an initial proffer. Ibid. Instead, the court highlighted the presiding judge's "discretion whether to allow defense counsel to call an adverse witness with or without" a proffer. Ibid.
C.
In a recent, thoughtful opinion by the Honorable Carmen Messano, P.J.A.D., the Appellate Division canvassed the CJRA and relevant case law and concluded that Edwards struck "the proper balance." State v. Stewart, 453 N.J. Super. 55, 68, 179 A.3d 1065 (App. Div. 2018). The defendant in Stewart sought to subpoena several *120 police officers--who allegedly saw him commit the offenses charged--to testify at the detention hearing as to probable cause. Id. at 60, 179 A.3d 1065. The trial court granted the request in part. Ibid.
The Appellate Division reversed and set forth the following standards. Before a defendant may call an adverse witness "to rebut the State's evidence of probable cause, the judge must first ask for a proffer regarding the witness' anticipated testimony and its relevancy to the issue of probable cause, and how the anticipated testimony negates the State's evidence already adduced at the hearing." Id. at 69, 179 A.3d 1065. To compel an adverse witness to appear on the issue of detention, "a defendant must make a proffer demonstrating how the anticipated testimony would rebut or diminish the otherwise clear and convincing evidence the State must produce." Id. at 70, 179 A.3d 1065. In both instances, the trial court has "significant discretion to compel the production of a witness." Id. at 71, 179 A.3d 1065.
V.
We review the interpretation of a statute de novo. State v. S.S., 229 N.J. 360, 380, 162 A.3d 1058 (2017). As noted earlier, we also look to case law that interprets the Bail Reform Act and the District of Columbia statute for guidance.
**508 Ingram, 230 N.J. at 205, 165 A.3d 797. The Legislature adopted the precise language used in both of those laws when it granted defendants "an opportunity ... to present witnesses" at detention hearings. N.J.S.A. 2A:162-19(e)(1) ; accord 18 U.S.C. § 3142(f)(2)(B) ; D.C. Code § 23-1322(d)(4). We presume that the Legislature was aware of how other courts had interpreted that language--namely, that the text did not afford defendants an absolute right to compel the testimony of adverse witnesses--when it enacted the CJRA. See Maeker, 219 N.J. at 575, 99 A.3d 795. In light of the CJRA's history, we agree with Stewart that the law provides defendants a qualified right to call witnesses at detention hearings.
An alternative reading of the statute would have far-reaching consequences. An absolute right would mean that a defendant accused of rape, for example, could compel the victim to testify at a detention hearing in many instances. Undoubtedly, the victim would have information that bears on the nature and circumstances of the offense and the weight of the evidence. See N.J.S.A. 2A:162-20(a), (b). The same would be true in cases of attempted murder, robbery, aggravated assault, and many other offenses. Yet there is no basis to believe the Legislature had that in mind when it drafted the CJRA. To the contrary, it borrowed language from other laws that stood for a very different approach.
To determine the nature of the qualified right to present witnesses, we consider the different aspects of a typical detention hearing. Once again, the hearing has two components: the State must establish probable cause, unless there is an indictment, see N.J.S.A. 2A:162-19(e)(2), and must present clear and convincing evidence to justify detention, see N.J.S.A. 2A:162-18(a)(1). We address each in turn.
To establish probable cause in the context of an arrest, courts examine whether the police had a "well-grounded suspicion that a crime has been committed" and that the defendant committed it. State v. Dickerson, 232 N.J. 2, 24, 177 A.3d 788 (2018) (citation and internal quotation marks omitted). "That showing calls for more than a mere suspicion of guilt but less evidence than **509 is needed to convict at trial." Ingram, 230 N.J. at 213-14, 165 A.3d 797 (citations and internal quotation marks omitted); see also *121 Illinois v. Gates, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."). That "is not a high bar." District of Columbia v. Wesby, 583 U.S. ----, 138 S.Ct. 577, 586, 199 L.Ed.2d 453 (2018).
Traditionally, judicial officers have reviewed written affidavits to decide whether probable cause exists. See R. 3:3-1(a)(1); R. 3:4-1(a)(2). Although defendants have a right to a hearing to determine probable cause under Rule 3:4-3(a), that hearing is not required by the Constitution. State v. Smith, 32 N.J. 501, 536, 161 A.2d 520 (1960) ; State v. Ingram, 449 N.J. Super. 94, 104, 155 A.3d 597 (App. Div. 2017), aff'd, 230 N.J. 190, 165 A.3d 797 (2017). And in practice, probable cause hearings are rarely held. Today, under the CJRA, the State may proceed by proffer to establish probable cause at detention hearings. See Ingram, 230 N.J. at 213, 165 A.3d 797. According to the Administrative Office of the Courts, the State ordinarily does so. In essence, decisions about probable cause, both before and after the enactment of the CJRA, have routinely been made without live testimony.
Ultimately, the question of probable cause presents judges with but one choice to make: either there is sufficient probable cause to proceed with a case, or there is not. Against that backdrop, as to the issue of probable cause, we find that before being allowed to call an adverse witness, a defendant must proffer how the witness's testimony would tend to negate the State's showing of probable cause.
Suppose the State presents an affidavit with a straightforward set of facts that appear to establish probable cause. In practice, a defendant's proffer would have to reveal how the testimony of an adverse witness would tend to show that probable cause is lacking. Minor inconsistencies in a witness's testimony, for example, might raise credibility questions but would not tend to negate the existence of probable cause. The same is true for immaterial facts. Undermining them could cast doubt on parts of the State's **510 presentation yet not tend to show that probable cause is absent. In other words, it is not enough for a defendant to proffer that a witness has evidence that may be relevant in some way; the proffered evidence must tend to negate probable cause.
A more flexible standard is needed to decide when a defendant may call an adverse witness to challenge the State's case for detention because that decision is more complex than determining probable cause. As to detention, both sides have the right to present information about the nature and circumstances of the offense, the weight of the evidence, the nature of the danger to the community, the risk of flight, and the risk of obstruction. See N.J.S.A. 2A:162-20(a), (b), (d), and (e). Those issues invite qualitative judgments, not "yes" or "no" answers. The test advanced by the Attorney General acknowledges that distinction.
At the hearing, the State must shoulder its heavy burden of establishing grounds for detention by clear and convincing evidence. N.J.S.A. 2A:162-18(a)(1). If it fails to do so, the CJRA calls for the defendant's release, and there would be no need for further testimony by witnesses the defense might wish to call. If, on the other hand, the court tentatively believed the State had satisfied its burden, we conclude that the following standard should apply: Before being allowed to call an adverse witness on the issue of detention, a defendant must proffer how the witness's testimony would tend to undermine the State's evidence in support of detention in a material way. Thus, a defendant's proffer *122 must tend to reveal a good-faith basis to believe that the witness will testify favorably to the accused on an issue that is both relevant and material to the decision whether to detain the defendant. Stated otherwise, the proffer must tend to negate the propriety of detention.
At the hearing, defendants may of course proceed by proffer and present relevant police reports and other documents to the court. N.J.S.A. 2A:162-19(e)(1).[3] In many instances, that may well **511 obviate the need to summon an adverse witness. Before being allowed to call a witness or victim whose testimony is already described in a police report or affidavit, a defendant would need to proffer why live testimony is needed as well.
The above standard would limit efforts to summon a witness to impeach her credibility on a non-material point, and would avert a fishing expedition for discovery.
To be clear, after weighing a defense proffer, judges have discretion to accept and rely on the proffer, or not, and to compel an adverse witness to appear, or not. See Stewart, 453 N.J. Super. at 71, 179 A.3d 1065. When a witness appears, trial courts also retain broad discretion to control the proceedings. Among other steps, judges may curtail questioning to avoid repetition and ensure that the testimony stays focused only on relevant issues; they can limit examinations to "protect witnesses from harassment or undue embarrassment," see N.J.R.E. 611(a) ; and they can limit questions about a witness's whereabouts for legitimate safety reasons.
The above standards seek to balance a number of concerns. They are designed to enable defendants to challenge motions for pretrial detention and protect a vital liberty interest; to spare the State's witnesses from the equivalent of a mini-trial shortly after an arrest; and to underscore the trial judge's authority to control detention hearings.
A judge's decision whether to allow a defendant to compel an adverse witness to testify at a detention hearing is subject to review for abuse of discretion. See State v. S.N., 231 N.J. 497, 500, 176 A.3d 813 (2018). Here, because defendant pled guilty, we do not review the trial court's decision to detain him pretrial.
VI.
For the reasons stated above, we find that defendants have a qualified right to call adverse witnesses at detention hearings, and **512 we outline standards to guide that issue. Defendant's appeal is dismissed as moot.

While the appeal was pending, a Hudson County grand jury returned an indictment against defendant. It contained the charges for eluding and aggravated assault alleged in the complaint, as well as two additional offenses, second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and fourth-degree assault by auto, N.J.S.A. 2C:12-1(c)(1). Had the indictment been returned before the detention hearing, it would have established probable cause for purposes of the hearing. See N.J.S.A. 2A:162-19(e)(2).

In a later amendment to the D.C. Code, "probable cause" was substituted for the phrase "substantial probability." See 56 D.C. Reg. 7413, 7440 (Sept. 11, 2009) (amending D.C. Code § 23-1322(c) ).

The Appellate Division properly granted defendant's motion to supplement the record with police reports in this case, which were plainly relevant.