# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2163-18T6

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

K.S.,

     Defendant-Appellant.

_____

Argued April 2, 2019 – Decided  April 23, 2019

Before Judges Fisher, Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-06-1946.

Scott Michael Welfel, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Caitlin Petruccio, Assistant Deputy Public Defender, of counsel and on the brief).

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).

Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander R. Shalom and Jeanne M. LoCicero, on the brief).

Sarah D. Brigham, Deputy Attorney General, argued the cause for amicus curiae New Jersey Office of Attorney General (Gurbir S. Grewal, Attorney General, attorney; Sarah D. Brigham, of counsel and on the brief).

PER CURIAM

This interlocutory appeal – rendered technically moot by the passage of time and by defendant's untimely passing – poses questions about excludable time under the Criminal Justice Reform Act (the Act), N.J.S.A. 2A:162-15 to -26. Because the Act does not enumerate "continuity of government counsel" as a basis for excludable time, the appeal – if decided on its merits – requires that we first determine whether, as a matter of law, a prosecuting attorney's unavailability may represent "good cause," N.J.S.A. 2A:162-22(b)(1)(l); R. 3:25-4(i)(12), to prevent the accused's release through the imposition of excludable time.[1] And, if so, we would then be required to ascertain the

---

[1] We are mindful that both defense counsel and the ACLU, which has aligned itself with defendant's position, do not argue the absolutist position that no excludable time may be permitted for this reason because the Act does not expressly authorize such a determination. That doesn't mean, however, that we

circumstances that would justify excludable time when a particular prosecuting attorney is unavailable and the standard applicable to such a request. Even though this appeal has been mooted twice over, those mooting circumstances do not entirely foreclose a disposition on the merits. But, because the record is barren in many critical respects, we decline the opportunity to decide the important issues posed in this nearly fact-free environment. We explain.

On April 7, 2018, a domestic dispute in Irvington led to defendant's arrest for stabbing her boyfriend. Three days later, the prosecutor moved for defendant's pretrial detention pursuant to N.J.S.A. 2A:162-19(a)(1). That motion was granted.

The Act declares that an accused "shall not remain detained in jail for more than 90 days, not counting excludable time for reasonable delays . . . prior to the return of an indictment." N.J.S.A. 2A:162-22(a)(1)(a). On June 26, 2018, before the ninety days elapsed, defendant was indicted and charged with first-degree attempted murder, N.J.S.A. 2C:11-3(a)(1); N.J.S.A. 2C:5-1(a)(2), and

may not so hold. Their concession does not bind us. But, because we conclude that we should not decide these issues in the abstract, we do not reach that important issue.

A-2163-18T6

other offenses.[2] The Act also requires that a defendant "shall not remain detained in jail for more than 180 days" from an indictment's return – not counting excludable time – "before commencement of the trial." N.J.S.A. 2A:162-22(a)(2)(a). Defendant was thus entitled, after inclusion of other awards of excludable time not questioned here, to either be tried or released by January 5, 2019.[3] As a result, the trial was scheduled to occur the first week of January 2019.

On December 18, 2018, as the trial neared, the assigned prosecuting attorney started another trial. Recognizing his unavailability by the time defendant's trial was scheduled to start, the State moved on December 20 for an order of excludable time. The motion was based on the Act's general "good cause" catchall provision. See N.J.S.A. 2A:162-22(b)(1)(l) (recognizing the authority to grant excludable time "for other periods of delay not specifically enumerated if the court finds good cause for the delay"); R. 3:25-4(i)(12)

---

[2] Defendant was also charged with: second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon (a knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree possession of a weapon (a knife) under circumstances not manifestly appropriate for such lawful uses as it may have, N.J.S.A. 2C:39-5(d); and fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(l).

[3] The record reveals that the trial judge declared a few short periods of excludable time on earlier occasions that defendant has not challenged.

(describing the authority to grant excludable time in words identical to N.J.S.A. 2A:162-22(b)(1)(l) except that the rule also declares "that this provision shall be narrowly construed").  The judge heard argument on January 2 and rendered a written opinion on January 10 that granted the State's motion by relying only on the good-cause provision[4]; he excluded the twenty-four-day period from January 13 to February 5.[5]

Defendant immediately applied to us for expedited handling of a motion for leave to appeal.  We agreed to hear the motion on an expedited basis and, on January 23, 2019, we granted leave to appeal.  We directed expedited briefing and placed the matter on our April 2, 2019 plenary calendar, but we did not otherwise intervene, directing instead that the trial court proceedings go forward "unstayed."  We later invited the Attorney General and the American Civil

---

[4]  The State had alternatively moved for an award of excludable time based on public safety concerns recognized by Rule 3:25-4(c)(2).  The judge did not rely on this ground for the award.

[5]  The judge ordered – and defendant does not challenge – excludable time resulting from defendant's motion to reopen the detention hearing a few days before the State's motion for excludable time.  Defendant claimed that she should have been released in December, claiming the alleged victim recanted and no longer wanted to see this prosecution move forward.  That motion was denied but the time of the motion's pendency was found to be excludable.

A-2163-18T6

Liberties Union to participate; they accepted our invitation and filed briefs on the merits.

On March 15, 2019, the prosecutor's office advised that defendant had died. We inquired about mootness, and the parties and amici separately but unanimously responded that they thought we should rule on the merits due to the importance of the issues and notwithstanding defendant's death. We then requested submissions detailing the procedural history in the trial court since our grant of leave to appeal as well as further briefing on mootness arising from defendant's death. The parties provided their excellent submissions in commendably rapid fashion.

The parties' supplemental papers revealed to us what transpired since we granted leave to appeal. The trial commenced on February 5, 2019. Because the jury could not reach a verdict, the judge declared a mistrial on March 1, 2019. The parties then entered into plea negotiations, and, on March 4, defendant pleaded guilty to third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), in exchange for the State's recommendation of a non-custodial probationary term. Defendant was released on March 4, and the judge scheduled sentencing to occur on April 15, 2019.

Defendant died on March 14, 2019.

In considering whether we should exercise our discretion to consider the merits of this appeal, we are presented with two grounds for finding the appeal technically moot; the appeal is "moot squared."

Mootness arose first about the time we permitted this interlocutory appeal. When we granted leave to appeal, but chose not to intervene, the matter turned moot once the excludable time elapsed. Then, when defendant died before we could reach the merits, we had yet another reason for finding technical mootness.

Defendant's intervening death requires consideration of State v. Gartland, 149 N.J. 456, 464 (1997), where the Court recognized in a similar context that unlike the limitations imposed by the federal constitution,[6] our state constitution[7] "does not confine the exercise of the judicial power to actual cases and controversies." As an example of our authority to decide appeals rendered moot by a criminal defendant's death, the Court cited its earlier holding in Newark v. Pulverman, 12 N.J. 105, 116 (1953), where the defendant's executrix was ultimately allowed to pursue her late husband's appeal of a municipal conviction. Similarly, in Gartland, the defendant was convicted and appealed

---

[6] U.S. Const. art III, § 2, cl. 1.

[7] N.J. Const. art. VI, § 1, ¶ 1.

A-2163-18T6

but died before the appeal's disposition; the Court acknowledged the power to decide the appeal notwithstanding the defendant's death. 149 N.J. at 460, 464-66. To be sure, those cases are distinguishable because those defendants were convicted and sentenced, and had pending appeals when they died. Here, the proceedings did not – and never will – result in the entry of a judgment of conviction.

Nevertheless, we interpret Gartland as recognizing the discretion of a court to consider the merits of an appeal even in the present situation. In fact, even if we view Gartland as reaching only as far as its facts, we are mindful that the Court has also spoken on this subject through its rule-making power. "[I]n any criminal action," Rule 2:3-2 permits a defendant or "the defendant's legal representative" to appeal either a judgment of conviction or an interlocutory order. So, we do not view defendant's death as terminating any further court involvement in this matter. We have the discretion to proceed further.

Reaching the merits of an appeal rendered moot either because of the inability of the court's decision to have a practical effect on the parties to the controversy, or because the defendant has died in the interim, warrants a careful exercise of the court's discretion. That discretion is influenced by concepts of judicial economy. In re Civil Commitment of C.M., __ N.J. Super. __, __ (App.

Div. 2019) (slip op. at 8); Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993); Anderson v. Sills, 143 N.J. Super. 432, 437 (Ch. Div. 1976). That discretion is also properly exercised in favor of a ruling on the merits only when the technically moot appeal presents issues of "great public importance," Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303 (1975); see also Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 484 (2008); De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring), or when the issues are "capable of repetition," In re Conroy, 98 N.J. 321, 342 (1985), "yet [likely] evade review," In re J.I.S. Indus. Serv. Co. Landfill, 110 N.J. 101, 104 (1988). These principles certainly constrain in many instances a disposition on the merits of a technically moot appeal, but we are also mindful that our Supreme Court has recently disregarded technical mootness in reaching out to decide issues arising under the Criminal Justice Reform Act. See State v. Pinkston, 233 N.J. 495, 503 (2018); State v. Mercedes, 233 N.J. 152, 169 (2018). Yet, unlike those cases, we have a defendant who has died in the interim and we have the Court's added admonition that the power to review a criminal matter after a defendant's death should only be "sparingly exercised." Gartland, 149 N.J. at 465.

And, not to be lost in all this is the overarching concern about courts deciding purely academic or hypothetical issues. In most instances, those concerns are indistinguishable from the court's inability to practically effect the parties' interests or, as additionally presented here, that one of the party's interest in the result has been quelled through death. But there is also a concern – whether a case is moot or not – when an appellate court is presented with an inadequate record. Whenever, for whatever reason, an appeal arises from an order produced without an adequate record, there is always a risk that the court's disposition will be purely academic and its pronouncement merely a hypothetical ruling. As expressed by Chief Justice Vanderbilt for our Supreme Court soon after its creation, courts must not "function[] in the abstract." N.J. Tpk. Auth. v. Parsons, 3 N.J. 235, 240 (1949). See also Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107 (1971); Indep. Realty Co. v. Twp. of No. Bergen, 376 N.J. Super. 295, 301 (App. Div. 2005). It is here that any willingness we may have had to proceed past the other qualities of mootness ends.

The record lacks information from which we might cogently determine whether the reason or reasons suggested as support for the excludable time order were in conformity with the Act. The State's motion does little more than allege:

that an assistant prosecutor was assigned to this matter at its outset; that this assistant was unavailable to try this case the first week in January 2019 because he had started another trial; and that the alleged victim's right to consult with the prosecution could be theoretically hampered by a late change in attorneys. The general question however – assuming a prosecuting attorney's unavailability might legally permit a finding of excludable time under any circumstance[8] – is whether the State took reasonable precautions to avoid finding itself in this position. And the record is absolutely silent as to what steps the State took in the run-up to defendant's January trial date.

Defendant was entitled to a trial within 180 days of her indictment or release, and the State was aware of this for 180 days. Any crunch caused by coinciding or overlapping trials in matters assigned to the designated prosecuting attorney would seem to be inevitable and foreseeable, not sudden

---

[8] It is interesting that the applicable statute and rule both provide numerous specific grounds for excludable time but say nothing about the unavailability of a prosecuting attorney as triggering an award of excludable time. Certainly this circumstance was foreseeable to the Legislature and the rulemakers, yet they all failed to express when or under what circumstances excludable time may be imposed in this or similar instances. It is arguable that this absence means they intended to exclude as excludable a prosecuting attorney's unavailability. But, in light of our disposition of this appeal, we need not entertain that question further.

A-2163-18T6

and unpredictable. So, when arguing to the trial court that excludable time was required, the State was obligated to reveal the actions it took to avoid this foreseeable quandary.

Surely, the State cannot argue defendant's speedy trial right, or her right to be released if not tried within 180 days, must take a back seat to the prosecution's convenience.[9] And, surely, the State cannot dispute that it was required to take precautions to avoid the circumstances in which it found itself as the trial date approached. At the bare minimum, in seeking an order of excludable time, the State should have presented facts to suggest that it had acted reasonably and engaged in careful, advanced planning and yet – despite such efforts – still could not avoid this consequence. In the absence of such a presentation, the court can only guess whether the conflict in trial dates here –

---

[9] We were told at oral argument that this prosecutor's office consists of about 140 attorneys. It would seem that there was at least one of those many attorneys who could have prepared to try this case with no great amount of advance notice. It is hard to imagine that a defendant's rights under the Act carry less weight than the choice of the prosecutor's office not to have another attorney waiting in the wings if the assistant assigned to this matter was unable to proceed. But, again, since none of these facts and circumstances were presented to the trial court, we decline to rule on this and the other questions posed in the abstract.

A-2163-18T6

and the attorney's choice of one case over the other[10] – was enough to compel the imposition of excludable time. Perhaps, in some cases, such a ruling would be permissible. Again, we do not decide whether the unavailability of the prosecuting attorney is a ground for excludable time in any circumstances. But even if unavailability provides a basis for such an order, we have no way of knowing whether this is an appropriate instance for the exercise of that authority.

In its arguments to this court, the State seems to recognize the lack of an adequate factual record but nevertheless argues we should first set down the grounds rules – that we first delineate those requests that fall within "good cause" and those that don't – so that the next time this happens the State will know what presentation it should make in the trial court. We do not view the court's role in the same way. It was for the State to explain first what it did to avoid the problem it faced as January 2009 approached, and for the court to then respond with a determination about the reasonableness of the State's actions, not the other way around. By failing to present the trial court with an adequate factual basis for an award of excludable time – assuming such an award could

---

[10] The record does not even disclose whether the prosecuting attorney's other trial was on a similar footing. We do not know whether the defendant in that other case was incarcerated and also nearing a release date, and we have no way of knowing whether the other case that began instead of this one would have – if back-burnered – resulted in a similar need for excludable time.

ever be permitted merely because a prosecuting attorney is unavailable – the appeal before us truly lurks in the realm of the abstract. Even if we were to overlook the twin qualities of mootness overshadowing this appeal, we cannot ignore the fact that the important questions posed about excludable time based on "continuity of government counsel" grounds were presented on a record that is, to quote Judge Jayne, "as bald as a cannon ball." Cherr v. Rubenstein, 22 N.J. Super. 212, 216 (App. Div. 1952). That circumstance leads us to conclude, after much reflection, that we improvidently granted leave to appeal.

Appeal dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2163-18T6