# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2009-19T6
A-2010-19T6

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JUAN C. MOLCHOR,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JOSE A. RIOS,

      Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

July 8, 2020

APPELLATE DIVISION

Argued telephonically May 4, 2020 –
Decided July 8, 2020

Before Judges Messano, Ostrer and Susswein.

On appeal from the Superior Court of New Jersey,
Law Division, Gloucester County, Complaint Nos.
W-2020-000045-0806 and W-2020-000047-0806.

Cristina L. Vazquez argued the cause for appellant Juan C. Molchor.

Tamar Yael Lerer, Assistant Deputy Public Defender, argued the cause for appellant Jose A. Rios (Joseph E. Krakora, Public Defender, attorney; Tamar Yael Lerer, of counsel and on the briefs).

Jonathan I. Amira, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Christine A. Hoffman, Acting Gloucester County Prosecutor, attorney; Jonathan I. Amira, of counsel and on the briefs).

Sarah C. Hunt, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Sarah C. Hunt, of counsel and on the brief).

Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey, attorneys; Katherine Eliza Haas, Alexander R. Shalom, and Jeanne M. LoCicero, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

These consolidated pretrial detention appeals raise the question: does the Criminal Justice Reform Act (CJRA or Act), N.J.S.A. 2A:162-15 to -26, authorize a court to detain arrestees who are undocumented immigrants in order to thwart their potential removal from the country by federal immigration officials, and thereby to assure they appear at trial? Construing the Act in light of its legislative history and persuasive federal authority, we

conclude it does not. Rather, the risk of a defendant's failure to appear justifying detention must arise from the defendant's own misconduct, not the independent acts of a separate arm of government that may prevent a defendant from appearing. The trial court erred in detaining defendants in part out of concern that their possible removal from the country would prevent their appearance at trial. The trial court also lacked sufficient evidence for its finding that no conditions would reasonably assure that they would not obstruct justice, and, in Rios's case, would not pose a risk to the safety of others. Therefore, we reverse the trial court's orders and remand for further consideration.

I.

Jose A. Rios and Juan Molchor were both arrested and charged with second degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and fourth degree criminal mischief, N.J.S.A. 2C:17-3(a)(1). According to the State's version of events,[1] Rios, Molchor and a third person engaged in a fight with an acquaintance, Hugo Alvarez, at a party at Alvarez's address. Defendants allegedly punched Alvarez, and struck him repeatedly on the head with beer bottles. Alvarez suffered a severe laceration, and briefly lost consciousness.

---

[1] We rely on the complaint-warrants, affidavits of probable cause, preliminary law enforcement incident reports, police reports, and the assistant prosecutor's statements at the detention hearing.

Defendants also allegedly damaged Alvarez's and another vehicle. Both Rios and Molchor left the scene in a car, but police stopped them. They appeared to be under the influence when arrested. Rios was also charged with driving under the influence. N.J.S.A. 39:4-50. He was twenty-two years old. Molchor was twenty-one.

On the risk scale for failure to appear, defendants' Public Safety Assessments (PSAs) rated them both "1," the lowest risk. The PSAs rated them "2" on the risk scale for new criminal activity. Neither defendant triggered a "New Violent Criminal Activity Flag." Defendants had no prior convictions, failures to appear, or adjudications of delinquency. The PSAs recommended defendants' release conditioned on monthly reporting.

Highlighting defendants' immigration status, the State moved for pretrial detention in separate hearings. The State argued that because Rios is "undocumented," he posed a "risk of flight," and "there is concern that if he is taken into federal custody on possibly an ICE [Immigration and Customs Enforcement] detainer that the alleged victim will not be able to have the . . . benefit of justice from having a fair trial . . . ." The assistant prosecutor stated he believed it "very likely" that would happen, without presenting any evidence ICE was interested in Rios.

In making a similar argument in Molchor's case, the assistant prosecutor appeared to equate Molchor's potential involuntary detention by federal immigration officials as "flight." He stated, "[H]e is an undocumented immigrant which gives the State serious concern with respect to risk of flight given the nature and seriousness of these charges. If for instance Mr. Molchor was to become detained in federal custody the State would have serious difficulty having him appear . . . ."

The State argued that the PSA "[did] not take immigration status into account," and suggested that Rios could have "prior failures to appear or other matters [the State was] unaware of if he used other identifiers." In both cases, the State also asserted that defendants lived within "five minutes" of Alvarez, and posed a risk of retaliation against the alleged victim. In each case, the assistant prosecutor also argued that each defendant was "charged with a crime of serious risk that he will impose a danger to any other person of the community."

In opposing detention, defense counsel highlighted defendants' PSA scores and recommendations of release. He argued in Molchor's case that there was no evidence of an ICE detainer; and the State could inform ICE that Molchor's presence was needed at trial. He argued in both cases that a no-contact order would suffice to protect the alleged victim. Lastly, he argued the

A-2009-19T6

State, in alleging risk to the safety of others, inappropriately relied solely on the offense charged.

The court accepted the State's argument that detention was needed to prevent defendants' non-appearance as a result of their potential removal from the country. In Rios's case, the court stated, in response to defense counsel's argument for release, "[E]verything you say I agree with under normal circumstances, but your client is an admitted, undocumented illegal alien which raises major concerns for whether he's going to be here to answer to these charges." The judge indicated that his concern related not to the risk Rios might intentionally absent himself, but the risk ICE might prevent him from appearing: "ICE needs to be contacted before he is released. They may choose to deport him at this point, I don't know." The judge then referred to the risk of "flight," without clarifying whether he meant defendant's volitional acts, or ICE's intervention. "I'm not keeping him because of the seriousness of the charges, but I am keeping him because of the seriousness of the charges and the concern . . . of flight which will lead to his failure to appear in court for these matters."

Without specifically addressing the efficacy of a no-contact order, the judge added, "[T]here's a concern, which I don't think can be resolved, with

him attempting to obstruct the criminal justice process by contact with the victims in this case."

In Molchor's case, the judge again expressed concern that defendant would not appear because of his immigration status. He stated that "everything else being equal," he "would probably [be] subject to release." However, "the seriousness of the charge coupled with the fact that [he was] looking at severe jail time[,] [a]nd the fact that he is an illegal undocumented alien" created "great concern . . . that he [would] be available to answer for these charges." The judge added that "ICE needs to be notified by the State . . . . Let it shake out where it shakes out. I don't feel comfortable releasing him." The court also stated that Molchor could potentially "interfere with the State's process by contact with the victim."

The court entered nearly identical written orders that embodied the court's conclusions. In each, the court included, as its sole finding of fact and conclusions of law, "The nature and circumstances of the offenses charged. Particular circumstances, specifically, Defendant is an illegal alien." Additionally, the court stated in Rios's order, "Based upon the seriousness of these charges and his immigration status, the court finds by clear and convincing evidence that there are no conditions of release which will assure

his appearance in court." The court stated virtually the same thing in Molchor's order.

The court also relied upon the seriousness of the charges and defendant's immigration status in finding there were no conditions "which will assure that the defendant will not be attempting to obstruct the criminal justice processes by contact with the victim." Without explanation, in Rios's order, the court also found by clear and convincing evidence that there was no amount of monetary bail, non-monetary conditions, or a combination of the two that "would reasonably assure . . . the protection of the safety of any other person or the community . . . ."

These appeals followed. We asked for supplemental briefs and granted amicus status to the Attorney General and the American Civil Liberties Union (ACLU).

II.

Defendants and the ACLU argue defendants were detained because of their immigration status, and the perceived threat that federal immigration action would prevent them from appearing. They contend the CJRA does not permit detention on those grounds. They argue the risk a defendant may fail to appear justifying detention must arise from the defendant's own volitional acts, not the intervening acts of another governmental entity. In the alternative, they

8

argue if the threat of removal is an appropriate consideration regardless of a defendant's volitional acts, the threat must be imminent, and the State must diligently seek its delay. As there was no evidence that ICE had even lodged a detainer or otherwise expressed interest in defendants – and given the inherent uncertainty in federal immigration law and proceedings – they argue the threat of their removal was too remote to justify detention. Defendants also contend there was insufficient evidence to support the court's conclusion that detention was necessary to prevent obstruction of justice, or in Rios's case, to protect others' safety.

The State and the Attorney General respond that a defendant's volitional conduct is not required in evaluating the risk he (or she) may not appear in court. They contend that the court may consider the risk of non-appearance created by other governmental actors. They argue, based on their interpretation of federal immigration law and practice, federal immigration enforcement action leading to removal was sufficiently likely in defendants' cases to justify detention. They add that detention in this case was warranted based on the totality of factors, including defendants' alleged lack of community ties – although the record is silent on the subject – and the seriousness of the charges.

### III.

We review the trial court's detention decision for an abuse of discretion, meaning, we may reverse the trial court if it ordered detention "by relying on an impermissible basis, by relying upon irrelevant or inappropriate factors, by failing to consider all relevant factors, or by making a clear error in judgment." State v. S.N., 231 N.J. 497, 500 (2018). Also, we generally will not defer to the trial court if it fails to provide the "factual underpinnings and legal bases" for its discretionary decision. Id. at 516 (quoting State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017)). We review de novo questions of the CJRA's meaning. State v. Pinkston, 233 N.J. 495, 507 (2018). Consequently, we review de novo a detention decision "based upon a misconception of the law." C.W., 449 N.J. Super. at 255.

We assume the reader's general familiarity with the history of the CJRA, and its mandate for the presumptive pre-trial release of all defendants except those charged with murder and offenses for which a life term is possible, unless the court finds by clear and convincing evidence that no release conditions "would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162-18(a)(1); see generally State v. Robinson,

229 N.J. 44, 52-62 (2017) (describing CJRA background and summarizing the Act).

We focus on a court's power to detain if no release conditions "would reasonably assure the eligible defendant's appearance in court when required." N.J.S.A. 2A:162-18(a)(1). The Act's language matches that of the Constitutional amendment authorizing pre-trial detention, stating that "[p]retrial release may be denied to a person if the court finds that no amount of monetary bail, non-monetary conditions of pretrial release, or combination of monetary bail and non-monetary conditions would reasonably assure the person's appearance in court when required . . . ." N.J. Const., art. I, ¶ 11; see also N.J.S.A. 2A:162-19(a)(7)(a) (stating that a prosecutor may seek detention in any case in which "the prosecutor believes there is a serious risk that . . . the eligible defendant will not appear in court as required").[2]

In determining whether detention is necessary, the trial court "may take into account," among other factors, "[t]he history and characteristics of the eligible defendant." N.J.S.A. 2A:162-20(c). We conclude a defendant's immigration status is a "characteristic," notwithstanding the Act does not

---

[2] Although we refer to the Constitutional amendment, we confine ourselves to construing the Act, as "[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of the litigation." Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80 (2006).

explicitly mention it in a non-exclusive list of characteristics.[3] In <u>State v. Williams</u>, 452 N.J. Super. 16, 21-22 (App. Div. 2017), we held that the defendant's pregnancy could be considered as a factor potentially impacting whether pretrial detention was necessary, despite it not being explicitly listed in N.J.S.A. 2A:162-20. Similarly, applying the pre-CJRA bail regime, the Supreme Court stated, "When bail is set, it is entirely appropriate to consider a defendant's immigration status in evaluating the risk of flight or non-appearance." <u>State v. Fajardo-Santos</u>, 199 N.J. 520, 531 (2009).

The person's status along with the action or inaction of federal immigration officials may prompt a defendant to react in different ways. A person's status may include, for example, whether the person is an undocumented entrant to the country, the person has overstayed a visa, or the

---

[3] N.J.S.A. 2A:162-20(c) states that "history and characteristics" include:

> (1) the eligible defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (2) whether, at the time of the current offense or arrest, the eligible defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state . . . .

person is a permanent resident. Federal immigration action may include, for example, whether a detainer has been lodged, whether federal officials have released the defendant on bond or parole after arrest,[4] whether an order of removal has been issued, and whether such an order has been stayed.

Absent any action by immigration officials, a person's status conceivably may, under the totality of circumstances, have little impact on whether he or she will appear in court. However, that may change, for example, with the lodging of a detainer, which "announces ICE's decision to obtain custody of the defendant in order to arrest and remove him, and . . . sets in motion the entire removal process." Fajardo-Santos, 199 N.J. at 531 (citing 8 C.F.R. § 287.7(a)). The triggering event may prompt some defendants to flee to avoid removal; others may want to submit to removal, as a more palatable option than the risk of conviction and incarceration following trial; and yet, others may "vigorously contest removal" to remain here and to fight State charges. Id. at 531-32. Their response may depend on factors related to their individual status and the particular stage of the immigration process; and their response may depend on other circumstances, such as their ties to the community, family and work, and their resources to fight to remain in the country.

---

[4] See Nielsen v. Preap, ___ U.S. ___, ___, 139 S.Ct. 954, 958-59 (2019) (interpreting statute authorizing such release subject to exceptions).

The Court's observations in <u>Fajardo-Santos</u> are pertinent here, although the Court made them in determining if it was appropriate, under the pre-CJRA regime, to increase bail of an undocumented immigrant after a detainer was filed. Under the CJRA, a court may consider facts regarding a defendant's immigration status, and the immigration proceedings, if any, that pertain to him or her, along with all other relevant circumstances, because they may affect a person's decision whether or not to appear in court as required. Critically, the two forms of non-appearance that the <u>Fajardo-Santos</u> Court considered involved a defendant's volitional act: purposely absenting oneself from court and intentionally submitting to federal removal proceedings.[5]

The question presented here is whether the CJRA permits a court to detain a defendant who would otherwise likely appear of his own volition, to thwart federal immigration officials who may prevent him from doing so. In other words, may a defendant be detained where release conditions may be

---

[5] Notably, Fajardo-Santos was still entitled to pre-trial release after the federal immigration detainer was lodged, although the release was conditioned on a higher monetary bail. The Constitution then mandated, in non-capital offenses, that "all persons shall, before conviction, be bailable by sufficient sureties," N.J. Const., art. I, ¶ 11 (2016). "Sufficient sureties" meant a bond amount that "will insure [the defendant's] appearance at the trial." <u>State v. Johnson</u>, 61 N.J. 351, 359-60 (1972); <u>see also</u> <u>State v. Steele</u>, 430 N.J. Super. 24, 35 (App. Div. 2013).

crafted to assure the defendant's appearance, but for his possible detention and removal by federal immigration officials.

Our goal is to discern and implement the Legislature's intent in adopting the CJRA. Pinkston, 233 N.J. at 504. We begin with the Act's plain language and "give the law's words their generally accepted meaning." State v. Ingram, 230 N.J. 190, 203 (2017) (citing N.J.S.A. 1:1-1). "If the plain language chosen by the Legislature 'leads to a clearly understood result' that is consistent with the legislative objectives of the statute and its context with related provisions, we apply the law as written." State v. Robinson, 217 N.J. 594, 604 (2014) (first quoting State v. Hudson, 209 N.J. 513, 529 (2012); and then citing State v. Rangel, 213 N.J. 500, 509 (2013)). "We may not 'rewrite a plainly written' statute 'or presume that the Legislature intended something other than that expressed by way of the plain language.'" State v. McCray, 458 N.J. Super. 473, 484 (App. Div. 2019) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

On the other hand, if the statutory language is not clear, as with any issue of statutory construction, "a court may resort to extrinsic evidence for guidance, including legislative history and committee reports." In re Kollman, 210 N.J. 557, 568 (2012). Regarding the CJRA, we also carefully consider federal case

law interpreting the federal Bail Reform Act, upon which the CJRA was modeled.  Pinkston, 233 N.J. at 504-05.

The CJRA's plain language does not resolve the question whether the risk of a defendant's failure to appear justifying detention must arise from the defendant's own volitional acts, and not federal officials' independent acts that prevent a defendant from appearing.  N.J.S.A. 2A:162-18 does not explicitly dictate that release conditions that fail to reasonably assure the person's appearance in court when required must fail because of the defendant's volitional acts, or someone else's.  Yet, read in context, one may plausibly construe the statute to require a defendant's volitional act, as the other grounds for detention – threatening "the safety of another person or the community," or "obstructing or attempting to obstruct the criminal justice process" – necessarily involve volitional acts.  N.J.S.A. 2A:162-19 ambiguously refers to the "serious risk that . . . the eligible defendant will not appear in court as required."  While the provision does not expressly require that the risk arise from a defendant's volitional acts, one may infer that requirement, since the provision refers to the defendant's response to requirements to appear.

The interpretive statement to the constitutional amendment, which the Legislature supplied, explained to voters that the language found now in Article I, Paragraph 11 (and in N.J.S.A. 2A:162-18) "would give a court the

option of ordering a person to remain in jail in some situations. The court could order such detention based upon concerns that the person, if released: will not return to court." Sen. Concurrent Res. 128 (216th Legis.) (July 10, 2014). An interpretive statement is designed to be "an aid to understanding the matter under consideration." Bd. of Chosen Freeholders v. State, 159 N.J. 565, 582 (1999). We may presume the Legislature, in utilizing the same language in the Act, had that same meaning in mind. By referring to a defendant's "return," the provision arguably implies a defendant's volitional act. Alternatively, a person's return to court may be blocked by others.

In light of the Act's ambiguity, we turn to its legislative history. As the Supreme Court observed, the CJRA's enactment followed recommendations of the Joint Committee on Criminal Justice (Joint Committee). Robinson, 229 N.J. at 53-54 (discussing report of the JCCJ).[6] The Legislature adopted the CJRA to implement the proposed reforms. In construing a statute, we may look for guidance to the statements of intent that a study commission expressed in recommending the statute's enactment. See In re LoBasso, 423 N.J. Super. 475, 490-91 (App. Div. 2012) (interpreting expungement statute

---

[6] The Joint Committee's report (JCCJ Report) may be found at http://www.judiciary.state.nj.us/pressrel/2014/FinalReport_3_20_2014.pdf.

adopted to implement gubernatorial study commission's recommendations in light of commission's statement of intent).

The Joint Committee equated non-appearance with a defendant's "misconduct," that is, a defendant's purposeful acts. It adopted as a "guiding principle" that "[a] criminal defendant's pretrial freedom may be legitimately restricted to respond to risks of pretrial misconduct." JCCJ Report at 14. The Joint Committee explained, "Pretrial misconduct takes two forms: (1) nonappearance in court when required (hereinafter 'flight') and (2) commission of additional crimes, witness intimidation or witness retaliation, while released and awaiting trial (hereinafter 'community danger')." Id.

The Joint Committee's focus on a defendant's "misconduct" is incompatible with permitting detention to thwart the independent actions of a federal governmental agency that affects the defendant's ability to appear. Rather, the Joint Committee proposed a system that authorized pre-trial detention when release conditions could not be devised to manage a defendant's "misconduct" leading to non-appearance. Id. at 15-16, 18. The system depends on individualized assessments of the defendant's risk of misconduct. Id. at 57-62. The Joint Committee proposed a system to address a fundamental unfairness of the old bail system: that a person who is presumed innocent and who posed a manageable risk of pre-trial misconduct could be

18

detained because he or she lacked the resources to post bail. Id. at 3, 14. It would likewise be unfair to detain such a person to thwart some other governmental entity's actions.

As initially introduced, the CJRA legislation expressly equated the risk of "non-appearance" with the risk a defendant would "flee," indicating that non-appearance, like the act of fleeing, is volitional. Senate Bill No. 946 (216th Legis.) (January 27, 2014) expressed the purpose of avoiding monetary bail to "reasonably assure the defendant's appearance in court," see § 1; it authorized detention if no pre-release conditions "would ensure the defendant's appearance as required," see § 4(a); and it authorized a prosecutor to seek detention "in a case that involves a serious risk that the defendant will flee," see § 5(2)(a). In reporting that version of the bill, the Senate Judiciary Committee Statement explained that "the bill provides that a court may also hold a detention hearing, upon a motion of either the prosecutor or as initiated by the court in any case that involves a serious risk that the defendant . . . will flee"; and the court is authorized to impose "non-monetary release alternatives to setting bail . . . to ensure that a defendant appears for trial." See Sen. Judiciary Comm. Statement to Sen. Bill 946 (March 24, 2014) at 1, 2.

We recognize that by subsequent amendment, the Senate deleted the reference to the risk a defendant "will flee." See Sen. Bill 946 First Reprint

(216th Legis.) (as reported by Sen. Budget and Approp. Comm. June 5, 2014), § 6(a)(6)(a) (authorizing a detention motion when the prosecutor believes "there is a serious risk that . . . the defendant will not appear in court as required"). However, the accompanying committee statement did not address the reason for the change, which survived subsequent amendments and enactment without further explanation. See Sen. Bill 946 Second Reprint (216th Legis.) (as adopted by the Senate June 12, 2014); and Sen. Bill 946 Third Reprint (216th Legis.) (as adopted by the Senate July 31, 2014).

Conceivably, the change was intended to make sure that a defendant's voluntary non-appearance was not limited to flight. Flight includes an element of departure and an intent to avoid detection. See Ingram, 196 N.J. 23, 46 (2008). Yet, a defendant may voluntarily absent himself from court without going anywhere, or hiding from anyone. Id. at 47 (holding it was error to deliver a flight charge where a defendant decided to absent himself from trial without evidence he did so "to avoid detection, arrest, or the imposition of punishment"). The amended legislation enables a prosecutor to seek detention to manage that sort of non-flight voluntary non-appearance. Therefore, the legislative change does not imply an intent to authorize detention to manage the risk of a defendant's non-volitional failure to appear.

Indeed, notwithstanding the Legislature's modification, our Supreme Court has often equated "non-appearance" with "flight," suggesting that "non-appearance," like "flight," must be volitional. The Court explained in Robinson, 229 N.J. at 54, that the Act "allows for pretrial detention of defendants who present . . . a serious risk of danger, flight, or obstruction . . . ." See also State v. Mercedes, 233 N.J. 152, 163 (2018) (stating that "whether detention is warranted" depends on "whether any combination of conditions will reasonably protect against the risk of flight, danger, or obstruction"); Ingram, 230 N.J. at 194 (noting that "prosecutors can seek to detain defendants who pose a serious risk of danger, flight, or obstruction").

Our conclusion that non-appearance under the CJRA must be volitional, finds support in persuasive federal case law interpreting the federal Bail Reform Act. Like the CJRA, the federal law allows a court to order a defendant detained pretrial upon finding "no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e)(1).[7] The federal law also specifically authorizes

---

[7] The phrase "reasonably assure the appearance . . . as required" is also used in the provision authorizing release conditions, 18 U.S.C. § 3142(c); and the provision authorizing a hearing to determine the efficacy of such conditions, 18 U.S.C. § 3142(f). Notably, the federal law also includes the language found in the originally introduced State legislation, authorizing a prosecutor (and the

temporary detention, to give federal immigration officers an opportunity, over a ten-day period, to take the defendant into custody, if the court finds that the person is not a citizen or a lawfully admitted permanent resident and "such person may flee or pose a danger to any other person or the community." 18 U.S.C. § 3142(d)(2). We do not view that provision as a distinction that would make federal precedent inapplicable. If federal immigration officials do not avail themselves of the ten-day window of opportunity, then the defendant is treated like any other under the law's remaining provisions, including 18 U.S.C. § 3142(e), allowing detention for an unmanageable risk of non-appearance. Ibid.; see United States v. Soriano Nunez, 928 F.3d 240, 244-45 (3d Cir. 2019).

In United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015), the Court of Appeals held that "the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition." (citing United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1176-78 (D. Or. 2012)). The Court of Appeals held "the district court erred in relying on the existence of an ICE detainer and the probability of [the defendant's] immigration detention and removal from the United States to find that no condition or combination of

court on its own initiative) to seek detention "in a case that involves . . . a serious risk that such person will flee." 18 U.S.C. § 3142(f)(2)(A).

conditions will reasonably assure [his] appearance pursuant to 18 U.S.C. § 3142(e)." Id. at 1092. Since immigration officials did not avail themselves of the temporary detention provision, the district court's order detaining the defendant "based on the possibility of his detention or removal by immigration authorities . . . [was] contrary to the express language of the Bail Reform Act." Id. at 1091. The district court's decision "substitute[d] a categorical denial of bail for the individualized evaluation required by the Bail Reform Act." Id. at 1091-92.

Other federal courts have likewise concluded that, to justify detention under 18 U.S.C. § 3142(e), the risk of non-appearance must pertain to voluntary or volitional non-appearance. See United States v. Espinoza-Ochoa, 371 F. Supp. 3d 1018, 1022 (M.D. Ala. 2019) (holding non-appearance must be volitional, and rejecting United States' argument "that because it could not ensure that the defendant would be present at trial due to the administrative deportation proceedings initiated by ICE, the defendant should be held pursuant to the 'risk of nonappearance' clause of the Bail Reform Act"); United States v. Resendiz-Guevara, 145 F. Supp. 3d 1128, 1134 (M.D. Fla. 2015) (following Santos-Flores); United States v. Barrera-Omana, 638 F. Supp. 2d

1108, 1111 (D. Minn. 2009) ("[t]he risk of nonappearance referenced in 18 U.S.C. § 3142 has to involve an element of volition").[8]

Notably, the Court of Appeals in Santos-Flores affirmed the district court's alternative ruling that detention was justified because the defendant was a "voluntary flight risk."  794 F.3d at 1092 (emphasis added).  The district court's finding was supported by such factors as the defendant's "violation of the terms of his supervised release, his multiple unlawful entries into the United States, [and] his prior failure to appear . . . in state court," among other factors.  Ibid.

We reject the Attorney General's argument that detaining a defendant to prevent his or her removal from the country is justified "to save our criminal-justice system from being trampled by the actions of federal immigration

---

[8]  The court in United States v. Ailon-Ailon, 875 F.3d 1334, 1336-38 (10th Cir. 2017) reasoned that before the court may consider, as a second step, whether there exist conditions that "will reasonably assure [the defendant's] appearance," 18 U.S.C. § 3142(e), the government had to make a threshold showing of a serious risk that the defendant "will flee," under 18 U.S.C. § 3142(f)(2)(A), and "[t]he ordinary meaning of 'flee' suggests volitional conduct."  See also United States v. Villatoro-Ventura, 330 F. Supp. 3d 1118, 1135 (N.D. Iowa 2018) (following Ailon-Ailon reasoning).  Inasmuch as the reference to "flee" was deleted from the CJRA legislation, we do not rely on the textual analysis in Ailon-Ailon.  Notably, the government may also file a motion to detain if the defendant is charged with certain enumerated crimes, 18 U.S.C. § 3142(f)(1), without demonstrating a threshold risk the defendant "will flee."  The court must then consider whether there exist conditions that would "reasonably assure [the defendant's] appearance."  18 U.S.C. 3142(e).

A-2009-19T6

officials." The State has other options. It may seek the immigration officials' cooperation in staying their proceedings to permit the State's prosecution to proceed.[9] However, even if such efforts fail, we do not accept the premise that a defendant's pre-trial freedom may be sacrificed, against the defendant's will, to enable the State's prosecutorial goals to override federal immigration priorities.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987) (declaring federal Bail Reform Act constitutional); see also Robinson, 229 N.J. at 68. Defendants are presumed innocent. Detention may be justified by the unmanageable risk a defendant will obstruct justice, harm others, or not appear. Those acts must be volitional.

Our criminal statutes "require a voluntary act . . . as [one of] the minimum conditions for liability." State v. Sexton, 160 N.J. 93, 98 (1999). "A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is

---

[9] See U.S. Immigration Customs and Enforcement, Protecting the Homeland: Tool Kit for Prosecutors (April 2011), available at https://www.ice.gov/doclib/about/offices/osltc/pdf/tool-kit-for-prosecutors.pdf. The document states that "ICE is committed to supporting the efforts of prosecutors to bring criminals to justice," at 2; it explains that prosecutors may request that ICE defer action, at 4-6, or stay removal, at 6-8, to enable local prosecutions to proceed.

physically capable." N.J.S.A. 2C:2-1(a). Under our system, a person must be responsible for an act, to be punished for it. Although the CJRA is not a criminal statute, it authorizes a defendant's incarceration that is all the more harsh because a court has not convicted him or her of any crime, and may never do so. Allowing detention to thwart federal immigration action would offend the fundamental requirement of a voluntary act. It would permit incarceration to address the risk a defendant may not appear when he or she is not responsible for his or her absence, and is not "physically capable" of appearing, because federal immigration officials have taken that defendant into custody or removed that defendant from the country. Without addressing the scope of defendants' substantive due process rights to pre-trial freedom, we conclude that the Legislature did not intend such a result. Rather, it intended that a defendant may be detained based on the risk of non-appearance only if it arises from the defendant's own misconduct or volitional act.

In sum, the trial court erred in accepting the State's argument that the risk of defendants' involuntary non-appearance, resulting from federal immigration officials' actions, justified detention.[10]

---

[10] Having concluded that a defendant's non-appearance must be volitional, we need not address defendants' alternative argument that if the risk of involuntary removal may be considered a factor in ordering detention, then the State must be obliged to diligently seek its delay, and the removal should be

IV.

We remand for reconsideration, directing the court to weigh the risk of non-appearance arising only from defendants' own potential misconduct or volitional acts. We add the following comments.

As our Court recognized in Fajardo-Santos and the federal court recognized in Santos-Flores, a defendant's immigration status, coupled with federal immigration action and other factors, may support a finding that a defendant poses a risk of flight or voluntary non-appearance. However, a court may conclude that such a risk is manageable. For example, in United States v. Chavez-Rivas, 536 F. Supp. 2d 962, 969 (E.D. Wis. 2008), which the Fajardo-Santos court cited with approval, 199 N.J. at 531, the federal court declined to find an unmanageable risk of flight notwithstanding the lodging of an ICE detainer, because of the defendant's "strong family and community ties."[11] In any event, a defendant's immigration status alone can rarely if ever

imminent. However, defendants persuasively argue that the likelihood their detention would block their appearance was speculative at best, inasmuch as ICE had not lodged a detainer or otherwise expressed interest in them. Furthermore, defendants' detailed discussion of the complexities of federal immigration practice highlight the difficulty in predicting whether or when a defendant will actually be removed from the country.

[11] The court ordered the defendant's release, subject to home confinement on electronic monitoring, mindful that the government's case was strong, and the

justify a finding that the defendant poses a risk of flight. The court is obliged to consider all relevant information available to it. Robinson, 229 N.J. at 62.

We also vacate the court's findings, as lacking sufficient evidence in the record, that defendants posed an unmanageable risk that they would obstruct justice by retaliating against the alleged victim, or that Rios posed a risk of danger to others or the community. The court did not consider the efficacy of other possible conditions to reasonably assure that defendants would not obstruct the criminal justice process. Simply asserting that defendants resided within a five-minute drive from the alleged victim does not suffice by itself to support detention. As for the safety risk Rios allegedly posed, the State cited only the nature of the offense. A Pretrial Services Program's "recommendation against release, based on the type of charge alone, cannot justify detention unless it is based on a statutory presumption of detention." Mercedes, 233 N.J. at 171. Here, Pretrial Services' recommendation was for release. Yet, the court appeared to detain Rios based on the charge alone. That was error.

Reversed and remanded for reconsideration. Defendants shall remain detained pending the hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

defendant faced the risk of a significant prison sentence. Chavez-Rivas, 536 F. Supp. 2d at 969.